Cite as 2025 Ark. App. 547

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-24-795

| | | |
|---|---|---|
| | | Opinion Delivered November 12, 2025 |
| DENNIS SNYDER | | |
| | APPELLANT | APPEAL FROM JEFFERSON COUNTY CIRCUIT COURT |
| V. | | [NOS. 35CR-23-172 & 35CR-24-251] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDERS |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Dennis Snyder appeals from his conviction, after a trial by jury in the

Jefferson County Circuit Court, of three counts of failure to comply with the registration

and reporting requirements under the Arkansas Sex Offender Reporting Act[1] (hereinafter

"SORA") and his sentence of an aggregate term of 30 years' imprisonment. For his sole

point on appeal, Snyder challenges the sufficiency of the evidence to support his convictions.

Snyder, however, failed to preserve his challenge to the sufficiency of the evidence at trial,

and on that basis, we affirm.

---

[1]Arkansas Code Annotated sections 12-12-901 to -929 (Repl. 2016 & Supp. 2025).

I. *Preservation*

As a Level 3 sex offender, Snyder was required to verify his registration in person with his local law enforcement agency, the Jefferson County Sheriff's Office (hereinafter "JCSO"), every six months. Ark. Code Ann. § 12-12-909(a) (Supp. 2025). A sex offender is also required to report a change of address, even if it is temporary, to local law enforcement in person five days before he establishes his residency at the new address.[2] Ark. Code Ann. § 12-12-909(b)(1)(A) & (c)(1). If the offender moves to a jurisdiction outside the state, he has a concurrent duty to register the change of address with his local law enforcement agency in Arkansas and with law enforcement in the new state five days before establishing residence in the new state. Ark. Code Ann. § 12-12-909(c)(1). The sex-offender-registration requirements are mandatory, and the failure to register is a strict-liability offense. *McDaniels v. State*, 2025 Ark. App. 213, at 4–5, 711 S.W.3d 164, 167.

After failing to report a temporary change of employer and residence out of state from November 2021 to February 2022 and then failing to register with JCSO during another six-month reporting period, Snyder was charged in two separate felony informations, 35CR-23-172 and 35CR-24-251, with failure to comply with the registration and reporting

---

[2]For purposes of SORA, a change of address means "a change of residence or a change for more than thirty (30) days of temporary domicile, change of location of employment, . . . or any other change that alters where a sex offender regularly spends a substantial amount of time." Ark. Code Ann. § 12-12-903(4). A "residency" includes a place the offender lives, even if he intends to "move or return at some future date to another place" and any temporary residence where the person resides "for an aggregate of five (5) or more consecutive days during a calendar year." Ark. Code Ann. § 12-12-903(10)(A) & (B)(iv). The term "residency" also includes "a place of employment." *Id.*

requirements in violation of Arkansas Code Annotated section 12-12-904. The charges were joined for trial, and Snyder was tried before a jury on August 21, 2024.

At trial, JCSO Sex Offender Coordinator Christy Badgley testified that she oversaw Snyder's compliance as a Level 3 sex offender. Snyder, who was required to report to JCSO every September and March, made a late report on November 5, 2021. On his registration verification form, Snyder listed the same address in White Hall for his residence and employer that he had previously used for several reporting periods. But in January 2022, Badgley received a notice from the Arkansas Crime Information Center (hereinafter "ACIC") that Snyder had registered as a sex offender in Peoria, Illinois, on November 12, 2021. Badgley contacted the employer listed on Snyder's Illinois registration and discovered that Snyder had been hired in November 2021, worked there 40 hours a week, and had a temporary residence in Peoria. Eventually, Badgley and JCSO investigators tracked down Snyder and confirmed over the phone that he had been residing and working on a temporary basis in Illinois. Denise Milligan, a records technician at the Peoria Police Department, through testimony confirmed Snyder's move. Milligan testified that Snyder registered as a sex offender with her on November 12, 2021, and on his registration forms, Snyder listed his residence as the address of a Peoria trailer park and listed a local company as his employer, with a November 9, 2021 hire date.

Badgley testified that Snyder next returned to JCSO for registration on April 4, 2022. On his verification form, he listed the same White Hall address he had previously reported

as his place of residence and employment. Snyder never acknowledged his temporary move to Illinois in his registration forms with JCSO.

Badgley testified that Snyder did not return for his next scheduled reporting deadline on September 26, 2022, and she received a notification from ACIC on October 23, 2022, that he had been flagged as delinquent in his reporting and registration duties. Although Badgley tried to reach Snyder at his listed phone numbers, Snyder did not answer or return her messages. Badgley next sent an officer to Snyder's home address, where the officer spoke with Snyder's wife who stated that he still lived there. But again, authorities could not make contact with Snyder, and he did not return to JCSO to rectify his reporting delinquency for that reporting period. Snyder was arrested for failure to report on January 11, 2023, and released on bond. On March 13, 2023, the first criminal information was filed against Snyder.

After the State rested its case, Snyder moved for directed verdict on the general argument that the State had failed to meet its burden of proof on all three counts. The circuit court denied the motion. At which point, Snyder's counsel informed the court that Snyder would not present proof in his defense and renewed the motion for directed verdict, again making a brief argument that the State had not met its burden. The jury found Snyder guilty on all counts, and he was sentenced to three consecutive sentences of ten years' imprisonment. In his appeal, Snyder's only point for reversal is a challenge to the sufficiency of the evidence.

To preserve a challenge to the sufficiency of the evidence, a criminal defendant must make a specific motion for dismissal or for directed verdict at the close of the State's case and at the close of all the evidence. *Richardson v. State*, 2020 Ark. App. 25, at 4, 595 S.W.3d 1, 3; Ark. R. Crim. P. 33.1(a) & (c).

Rule 33.1 states in pertinent part:

(a)In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(a) & (c). It is well settled that Rule 33.1's requirements are strictly construed. *Baker v. State*, 2022 Ark. App. 391, at 6, 654 S.W.3d 63, 67.

A motion for directed verdict must be specific enough to apprise the circuit court of the particular basis on which the motion is made. *Scott v. State*, 2015 Ark. App. 504, at 4, 471 S.W.3d 236, 239. "The reason underlying this rule is that, when specific grounds are stated and the proof is pinpointed, the trial court can either grant the motion or allow the State to reopen its case and supply the missing proof." *Id.* Our law is clear that an appellant

5

is bound by the scope and nature of his directed-verdict motion and cannot change his argument on appeal. *Id.*

On appeal, Snyder concedes that he is a Level 3 sex offender subject to the registration and reporting requirements of SORA and does not contest that he ran afoul of his reporting and registration duties. Instead, Snyder argues that his failure to report should be excused as to counts 1 and 2 concerning his unreported change of address because the fact that he registered in Illinois was proof that he tried to comply but misunderstood his dual obligation to report the change in both Arkansas and Illinois. As to count 3, Snyder argues that his failure to report during the six-month period from September 2022 to March 2023 was due to his being in poor health and undergoing major surgery during that period.

Not only did Snyder not make these arguments at trial, but his motion was almost devoid of the specific arguments that Rule 33.1 expressly requires. On the initial motion for directed verdict, counsel made an overly general statement that Snyder was making a "standard motion for directed verdict, stating the State has not put forth enough facts that should give the jury -- that moves them past suspicion and conjecture." And upon renewing the motion at the close of the evidence, counsel again made a vague statement that Snyder was "citing the same things that we don't believe we have enough facts to present to the jury."

The only specific argument that counsel made as to the deficiency of the State's evidence was that Christy Badgley was not a credible witness because counsel suspected Badgley knew Snyder was intending to make a temporary move to Illinois when she met with him on November 5, 2021, and helped him complete his verification form but did not want

6

to admit that she failed to include the change on the form. Yet Snyder does not mention this argument on appeal.

While there was evidence presented that Snyder registered in Illinois, counsel did not raise the issue of Snyder's misunderstanding of his dual reporting obligation as a basis for his directed-verdict motion on the first two counts. As to the other count, counsel did not make any argument that Snyder's poor health prevented him from reporting to JCSO from September 2022 to March 2023. Moreover, in his brief, Snyder admits there was no evidence whatsoever at trial concerning Snyder's health. Because Snyder did not specify the deficiency in the State's proof, he did not preserve his sufficiency challenge for appellate review. Hence, we affirm.

## II. *Sentencing Orders*

Finally, we note a clerical error in the sentencing orders. Snyder was charged as a habitual offender with four or more prior felony convictions, and his previous convictions were introduced during the sentencing phase of the trial. The jury sentenced him as a habitual offender. But the boxes on the sentencing orders that would indicate Snyder was sentenced as a habitual offender are not checked. The circuit court is free to correct a clerical error to have the judgment speak the truth. *Fowler v. State*, 2024 Ark. App. 63, at 14, 684 S.W.3d 271, 279. Accordingly, we affirm Snyder's convictions but remand to the circuit court with instructions to correct the sentencing orders.

Affirmed; remanded to correct sentencing orders.

THYER and WOOD, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.